## TODD ET AL. *vs.* BOONE COUNTY.

Boone county brought suit against the treasurer of that county and his securities in his official bond, for a default. On the trial, the county offered to introduce as a witness another security of the treasurer in a former bond, who being interrogated on his *voir dire*, stated that he had no interest in the event of the suit, but believed that a recovery against the defendants would prevent a suit against him: *Held,*

1. That his interest was of that remote and contingent character which affected only his credibility, and did not render him incompetent. The record in this suit could not be evidence for or against the witness in another action.

2. Where questions of fact have been submitted to a jury, and there is any contrariety in the testimony, the verdict will not be disturbed; but where the measure of damages is fixed by law, and the verdict is obviously the result of a mistaken view of the rule of law applicable to the facts in evidence, it will be set aside.

### ERROR to Boone Circuit Court.

LEONARD *and* TODD, *for Plaintiffs in Error.*

1. Moss Prewitt was an interested witness, and ought to have been excluded.— 2 Porter's Alabama Reports.

2. It devolved upon the plaintiff below to show an official default on the part of Cornelius, occurring during the official term covered by the bond now in suit, and the present bond being executed by the sureties on the 28th December, 1840, they are liable only for defaults occurring subsequent to that day.—United States *vs.* Eckford's Representatives, 1 Howard's U. S. Reps., 250.

3. In the imputation of indefinite payments, made by officers holding the same office by successive appointments, and who have given security for the discharge of their official duties, the rule is, that money received during an official term shall be applied to the payment of the indebtment created by the receipt of such money; and, in the absence of proof to the contrary, the presumption of law is, that the money paid during any one official term was received during the same term.— United States *vs.* Patterson & January, 7 Cranch Rep., 572; Seymour *vs.* Van-

*Todd et al.* vs. *Boone County.*

stick, 8 Wend. Rep., 403; Stone *vs.* Seymour & Bouck, 15 Wend. Rep., 19; United States *vs.* Eckford's Representatives, 1 Howard's U. S. Rep.; Marryatts *vs.* White, 2 Starkie's Rep., 101.

4. In the present case, the law has prescribed a certain measure of damages, and if the jury in their verdict have exceeded that measure, the Court will set it aside.—Stone *vs.* Seymour & Bouck, 15 Wend. Rep., 19.

GORDON, HAYDEN *and* KIRTLEY, *for Defendants in Error.*

1. Moss Prewitt was a competent witness, having no interest in the event of the suit, and the objection to him, if any, went to his credit, and not to his admissibility.—1 Phillips' Ev., 47–53; 1 Starkie, 102–5.

2. William Cornelius being, at the time of his first resignation, immediately reappointed, was, upon the execution of his last bond, immediately chargeable with the funds and effects of the office, there being no necessity for a formal settlement, under his last appointment, with himself, for the balances against him under his former one.

3. By his quarterly reports, from which the accounts preserved in the bill of exceptions were made up by the clerk, under Cornelius' last appointment, he admitted the several balances in his hands due for county revenue, for the three per cent. road and canal funds, and for the several township school funds; and this, with the testimony of Woodson and the facts exhibited in the accounts themselves, well warranted the verdict rendered by the jury in this cause.

4. The jury being the judge of the facts, and having evidence from which they were warranted in finding the verdict rendered, the Circuit Court committed no error in refusing to disturb that verdict.—U. States *vs.* Kirkpatrick, 9 Wheaton, 720; United States *vs.* January & Porter, 7 Cranch, 572; Seymour *vs.* Vanstick, 8 Wend., 403; 5 Mason, 87; Gert *vs.* Higgard, 1 Bibb. 91; 3 Littell, 169.

NAPTON, *Judge, delivered the opinion of the Court.*

This was an action instituted upon the official bond of William Cornelius, as treasurer of Boone county, with R. N. Todd, David Lammer and Samuel Murrell as securities.

The facts, as preserved by the bill of exceptions, are as follows:—

On the 2d December, 1840, William Cornelius resigned his office as treasurer of Boone county, (having held the same from January, 1836, up to that date,) and on the same day, he was re-appointed and entered into bond. On the 28th of the same month, this bond, with Todd, Lammer and Murrell as securities, was approved by the County Court. On the first of December, 1841, he resigned, and Moss Prewitt was appointed his successor. Upon his final settlement with the County Court, he was found chargeable with the following sums:—

> "County Revenue _____ $735 33½
> Road and canal fund _____ 757 63½
> Township school fund_____ 2,875 22½."

In January, 1842, Cornelius paid over to his successor a warrant on the road and canal fund, amounting to $709, which reduced his default on account of that fund to $48 63. During the same month, he was credited with $236 40, upon a warrant drawn on the township school fund, and with $520 paid in the same month, on a warrant drawn on the same fund, leaving a balance against him, on account of said township school fund, of $2,118 82.

Previous to the 2d of December, 1840, no regulations had been made by the County Court of Boone county, prescribing when annual settlements should be made by the treasurer. The treasurer made reports at each term of said court, of his receipts and disbursements of county revenue, and from these reports settlements were made out under direction of the court.

It appeared by a settlement made on the 26th November, 1840, upon the treasurer's report, that there was at that date a balance in the treasury of $1,494 06.

By a previous settlement, made on the 24th August, 1840, a balance appeared in the treasury of $4,159 25.

Prior to December, 1839, no general account relative to the school fund was kept with the treasurer, and it appeared from the testimony of the clerk of the court, that up to that time their mode of managing that fund was as follows: An order was made to loan any sum due a particular township; the notes presented· by the borrowers were examined, and if approved, the borrowers took the notes to the treasurer, who, upon presentation, paid the money, and filed the notes with the clerk.

After the 2d December, 1840, a regular account was opened with the treasurer, a transcript of which was in evidence. From this it appeared, that from the 2nd December, 1840, to the 28th of the same month, the treasurer had received of the county revenue the sum of $147 56, and during the same period, the sum of $415 15 of township school funds.

·Between the 30th December, 1839, and the 2d December, 1810, the settlements of the treasurer showed that there had come to his hands during this period, of school funds, the sum of $11,230 84; that he had disbursed thereof, during the same period, the sum of $9,726 84, leaving a balance on hand at the 2d December, 1840, of $1,493 50.

From the 28th December, 1840, to the 7th December, 1841, the treasurer had received of the township school fund the sum of $4,183 75, and had disbursed from the same fund the sum of $3,451 44, leaving a balance chargeable to him of $732 31.

During the same period (from the 28th December, 1840, to the 7th December, 1841,) the treasurer received of the county revenue the sum of $2,095 58¼, and disbursed on that fund the sum of $3,002 18.

It appeared from the testimony of several witnesses, that prior to the 2d December, 1840, and from the time of the treasurer's appointment in 1836, the defendant was a merchant in the town of Columbia; that he never kept any separate or distinct treasury; that the public funds were kept promiscuously with his private funds, and that many of his accounts relative to the treasury were kept in his mercantile books. Testimony was given, conducing to show, that the defendant,

about the 2d December, 1840, and previous thereto, had no money on hand, either of his own or the public, that his private debts were pressing, and that the public money had been squandered or applied to his private uses.

It appeared from the testimony of John Martin, who was sheriff of Boone county during the years of 1840 and 1841, that the witness, on the 3d August, 1840, settled with defendant for the revenue of the year 1839, which amounted to $3,250 84. That settlement was made in this wise: the witness having previously paid some money to defendant, he executed to him two promissory notes, one for $1,000, the other for $1,003 31, being the amount of revenue unpaid. These notes were afterwards settled with defendant at different times, and in various ways. Cash was paid to defendant during the months of September and November following, and on the 10th of December following, witness got a credit for $600 on said notes, by giving his note for that amount with security. Portions of the money he paid, by taking up individual notes of defendant. Witness was in the habit of depositing his money as sheriff and collector with defendant, and drew on defendant, who kept an account of receipts and disbursements with him. Witness had two settlements with defendant, before the two notes above referred to were liquidated: one in January, 1841, the other in August, 1841. As part payment of the money remaining due on the two notes, the witness executed his note with security, payable to one Field, which note defendant gave to said Field, in liquidation of a private debt due by him to said Field.

Objections were taken on the trial, to the introduction of Moss Prewitt as a witness, on the ground of interest. On his *voir dire*, this witness testified, that he was one of the securities of Cornelius on his first bond, and was his successor in the office of treasurer; that he, with others, had aided in employing counsel to prosecute the present suit, believing that a recovery in this action would prevent a suit against him; but he did not consider himself interested in the event of the suit. These objections to the witness were overruled, and he was permitted to testify.

No instructions were asked or given, and the jury found a verdict for the plaintiff, for $3,173 00. A motion was made to set aside the verdict and grant a new trial, but the motion was overruled, and judgment rendered on the verdict.

Only two questions are presented by the record; the first being as to the competency of the witness Prewitt, and the record as to the propriety of setting aside the verdict.

In relation to the admissibility of the witness, it is conceded, that if he was competent, his belief on that subject, either that he was or was not interested, will not affect the question. The general rules relating to the nature and degree of interest which will disqualify a witness are well enough established, but the application of these rules to particular cases is sometimes embarrassing, and has occasioned a considerable diversity and conflict of opinion.

A witness who stands in the same situation as the party for whom he is called to give evidence, is not, on that account, disqualified. Thus, if there are two actions brought against two persons for the same assault, in an action against one, the other may be a witness. (1 Phillips' Ev., p. —) This principle was, in the case of Blackett *vs.* Weir, (5 Barn. & Cress., 385,) extended to actions founded on

contract, and the court allowed a witness, who, on his *voir dire*, admitted his joint liability, to prove that the defendant was a partner.

In the case of Dixon *vs.* Hood, (7 Mo. Rep.,) this court did not adopt the doctrine of Blackett *vs.* Weir, but upon the authority of Brown *vs.* Brown (4 Tam., 752,) and Marquand *vs.* Webb, (16 Johns. Rep., 89,) held, that in such a case the witness was not competent to prove the defendant liable, and thereby directly diminish his own liability.

This class of cases we think clearly distinguishable from the present. The witness in this case, was security on the first bond, and the defendants were securities on the second bond, and a default had occurred, by which the plaintiff was entitled to recover the amount of the default, either from the defendants or from the witness. Suppose the witness by his testimony fixes the default on the defendants, and a recovery is had for the sum claimed; will that prevent the plaintiff from recovering the same amount from the witness and his co-securities? In other words, could the witness, in a suit upon the first bond, give in evidence the record of the judgment against the present defendants.

It is true that the probability of such recovery would be greatly diminished by a recovery in the present suit, since the conduct of the plaintiff would furnish strong grounds for believing her claim unfounded; but it cannot be pretended that the record would furnish any legal bar. The question in the suit against witness would be, whether witness was liable, and not whether the plaintiff had previously recovered the same sum from another.

The interest of the witness was, therefore, of that remote and contingent character which affects only his credibility, and does not render him incompetent.

The remaining ground upon which a reversal of this judgment is claimed is, that the verdict of the jury is wrong;— not supported by the evidence, and contrary to law.

By the act of February 14th, 1835, the treasurer is appointed by the county court, and holds his office during the pleasure of the court. It is made his duty to keep a just account of all monies received and disbursed, and regular abstracts of all warrants drawn on the treasury and paid. By the 7th section of this act the treasurer is required to settle his accounts once in every year, and if he resigns, be removed from office, or die, he, or his executors or administrators, is required immediately to make settlement, and deliver over to his successor all monies in the treasury, and all books and papers appertaining to his office. By the same act the treasurer is required to give bond, with security to be approved by the court, for the faithful performance of the duties of his office.

Cornelius resigned his office on the 2d day of December, 1840, but no settlement was made by him with the County Court at that time, as the law required; but he was on the same day re-appointed, and gave a new bond with securities. There is ground for believing from the testimony, that this bond was not executed by the securities until the 28th of the same month, when the bond was finally approved by the County Court. If this were so, (and whether it was so or not, was a question for the jury,) his securities are only responsible for his official acts subsequently to the time when they became parties to the instrument.

It appears that a settlement had been made with the defendant, Cornelius, on the 26th November, 1840, seven days previous to the commencement of the second term, and that upon this settlement there was a balance of $1,494 06 remaining in the treasury. This sum was carried over into the current account of the ensuing quarter, and the final balance on that fund, appearing against the treasurer, on the 1st December, 1841, when his second term expired, was $735 33½. The defendants were only responsible for the safe keeping of the monies received by Cornelius from the 2d or 28th December, 1840, (when they entered into bond) until the 1st December, 1841, and the balance of $1,494 06, which appeared charged against the treasurer at the commencement of the term for which they were liable, is only *prima facie* evidence that this sum was actually in the treasury. If this sum never came to the hands of the treasurer after the responsibility of the present defendants accrued, or had been squandered by Cornelius prior to that date, it is clear that they cannot be held accountable for this default. Testimony was given on the trial conducing to establish this fact; tending to show, that in truth the sum appearing from the settlement with the County Court to be in the treasury was not there, but had been misapplied and appropriated to the private uses of the treasurer, before the 2d December, 1840. This was a question for the jury, and we shall not undertake to determine how much consideration it was entitled to in forming their verdict.

But it appeared from the abstract offered in evidence, that from the 28th December, 1840, to the 7th December, 1841, there had been received by the treasurer of county revenue the sum of $2,095 58½, and that during that period he had disbursed the sum of $3,002 18, thereby showing an excess of disbursements over receipts of $758 74. Allowing the present defendants to have been chargeable with the sum of $147 56, received between the 1st and 28th of December, 1840, there would still be a balance in their favor upon that fund of $611 18. It would seem apparent from this calculation, that the sum of $735 33½, which was evidently charged in the verdict against the present defendants, must have been a default occurring prior to the date of their bond, and for which they were not responsible.

In relation to the school fund, it seems that from the 28th December, 1840, to the 7th December, 1841, the treasurer had received of this fund the sum of $4,183 75, and had disbursed the sum of $3,451 44, leaving a balance properly chargeable to the present defendants of $732 31. If to this be added the sum of $415 15, received between the 2d and the 28th December, the whole amount chargeable to the defendants on account of this fund would be $1,147 46. This is on the supposition that the balance of $1,493 50, which, from the clerk's transcript, appeared charged against the treasurer on the 2d December, 1840, was not in fact in the treasury after the liability of the defendants commenced.

The balance due on the road and canal fund was only $48 63, which, added to the deficit on the school fund, would show a default of $1,196 09 during the year 1841. The verdict of the jury was for $3,173, being evidently for the balance due at the expiration of Cornelius' second term, as it stood in the running account of the clerk of the County Court, and embracing the defaults of both terms, with interest up to the time of rendering the verdict.

Where questions of fact have been submitted to a jury, and there is any contrariety in the testimony, this Court has repeatedly avowed its determination to leave the verdict of the jury undisturbed.

In this case, however, the measure of damages is fixed by law, and the verdict is obviously the result of a mistaken view of the rule of law applicable to the facts in evidence before them. It must have resulted from a conviction that the clerk of the County Court, by his mode of keeping the account between the treasurer and the county, could affect the liability of the defendants on their bond. The responsibility of the defendants arises from their bond; this responsibility cannot be created or changed by any acts of the County Court, or its officer, the clerk.

If the court or its officer neglected to settle with Cornelius upon his resignation of the office of treasurer in December, 1840, as by law they were required to do, and by this means it has become difficult to ascertain the precise amount of defalcations happening during the period of either term—the neglect must not prejudice the rights of the defendants.

The judgment will be reversed, and the cause remanded.