## THE STATE v. SPIVEY, Appellant.

### Division Two, November 21, 1905.

1. **CHANGE OF VENUE: Notice to Prosecuting Attorney: Waiver.** Conceding that reasonable notice of defendant's application for a change of venue should be given the prosecuting attorney, which is not determined, yet when the prosecuting attorney appears at the presentation of the application, and resists it by the introduction of testimony, he will be held to have waived the failure to give notice.

2. ————: **Prejudice of Judge: Statutes Imperative.** The provisions of the statutes (secs. 2594 and 2595, R. S. 1899) rendering a judge incompetent to try a cause "when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial," are imperative. If the persons supporting defendant's affidavit are competent witnesses, and the application is otherwise in conformity with the statutory requirements, the judge must disqualify himself, and a failure to do so constitutes reversible error.

3. **MURDER: First Degree: Information.** The informattion set out in the statement in this case is held to properly charge the offense of murder in the first degree, though the charge of inflicting the mortal wound does not conform to the approved precedents.

4. ————: **Dying Declaration: Incompetent Statements.** Statements of deceased's wife, in detailing his dying declarations made to her, that deceased begged defendant not more than two weeks before the killing, not to run on him; that "he talked him out of running on him once before that; defendant run on him once before that with his knife, and wanted to kill him, and deceased talked him out of that"—were incompetent and should have been promptly excluded when objection was made, without waiting to cure the error by directing its exclusion in an instruction to the jury.

5. **DEFENDANT AS WITNESS:** Previous Offense: Improper Form of Question. While the State has the right to inquire of a defendant, testifying as a witness, as to whether he has ever been convicted of a criminal offense, the question should be propounded in accordance with the statute, and defendant should not be asked, for the purpose of influencing the jury, "Now state if you have not been in the penitentiary for stealing cattle?"

6. **EVIDENCE: Elicited by Defendant.** When statements of witnesses as to what deceased said to them, prior to the difficulty and in the absence of the defendant, are shown to be part of a conversation they had with deceased, which was drawn out by defendant's counsel, no error is committed in the witnesses' detailing what was said in the conversation.

7. **IMPROPER REMARKS OF ATTORNEY: Influence: Setting Aside Verdict.** Improper remarks of attorneys during the progress of the trial or in the argument to the jury frequently go far towards influencing the verdict; and where the State's attorney persists in getting out of the record and indulging in improper remarks, though often cautioned by the court, a verdict procured in that way should be set aside.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*B. A. McKay* and *V. J. Higgs* for appellant.

(1)   Appellant's demurrer to the information herein should have been sustained.   State v. Clayton, 100 Mo. 516; State v. Ferguson, 162 Mo. 673; State v. Williams, 83 S. W. 756.   (2)   The court erred in refusing to grant appellant a change of venue upon his application and affidavit.   Appellant's application for a change of venue was in strict conformity with the requirements of the statute (R. S. 1899, sec. 2594).   State v. Shipman, 93 Mo. 156.   The court erred in hearing testimony tending to show that the two compurgators to appellant's application for a change of venue were not reputable, and that the petition and affidavits were not in conformity with the statute (R. S. 1899, sec. 2594).   State v. Shipman, 93 Mo. 156.   There can be no doubt but that this statute is imperative, and upon the filing by the defendant of his petition and affidavits for a change of venue, the trial court is divested of all jurisdiction except to make an order granting the same.   Freleigh v. State, 8 Mo. 610; State v. Shipman, 93 Mo. 156; State v. O'Rourke, 55 Mo. 440; State v. Greenwade, 72 Mo. 305.   Even though notice to the prosecuting attorney had been required, he waived any exception to same, by being present and participating in the taking of testimony and other proceedings had upon the application for a change of venue.   (3)   The court erred in admitting the testimony of Mrs. John Martin as to declarations of deceased.   State v. Wilson, 121 Mo. 434.   (4)   The court erred in permitting the State to show by witnesses Wildee and Taylor what deceased said to them prior to the difficulty and in the absence of defendant.   State v. McCoy, 11 Mo. 517.   (5)   The court erred in permitting the prosecuting attorney to ask the following question and forcing the appellant to answer the same: "Now state if you have not been in the penitentiary for stealing cattle?" R. S. 1899, sec. 2637; State v. Graves, 95 Mo. 513; State v. Manning, 87 Mo. App. 82.

*Herbert S. Hadley*, Attorney-General, and *N. T. Gentry*, Assistant Attorney-General, for the State.

(1) The information, which was properly verified, is sufficient in form and substance. State v. Privitt, 175 Mo. 223; State v. Williams, 184 Mo. 261. (2) No error was committed in denying defendant a change of venue on account of the alleged prejudice of the judge. R. S. 1899, sec. 2594; State v. Turlington, 102 Mo. 648. If such affidavits as the ones in this case, made by such persons, are to control the affairs of our courts, then our criminal laws are a farce and our criminal procedure a mockery. (3) No error was committed in allowing the prosecuting attorney to ask witnesses Wildee and Taylor, in redirect examination, all of the conversation that they had with deceased at a time prior to the difficulty. Defendant's attorney had gone into that question, in cross-examination, and it was proper for the State to then question said witnesses concerning the same. In other words, defendant made the subject competent by first asking questions thereon. Nichols v. Nichols, 147 Mo. 403. (4) Neither was error committed in allowing the prosecuting attorney to ask the defendant, in cross-examination, if he had not served a term in the penitentiary. Defendant's attorney objected but the court permitted the question to be answered. As defendant replied in the negative, no harm was done defendant; rather harm was done the State. State v. Heusack, 88 S. W. 21; Underhill on Evidence, sec. 340.

FOX, J.—This cause is here upon appeal by defendant from a judgment of the circuit court of Pemiscot county, Missouri, convicting him of murder of the first degree. The prosecution of this cause is predicated upon an information filed by the prosecuting attorney of Pemiscot county, Missouri, on August 26, 1903, charging defendant with murder in the first degree. The

name of the party charged to have been killed was John Martin, and the alleged date of the offense was the 15th day of May, 1903.

A suggestion of the diminution of the record is made by the Attorney-General in respect to the form of the indictment. Acting upon this suggestion, this court made a rule upon the clerk of the circuit court of Pemiscot county to transmit the original information as filed, which rule was complied with, and the information is now before us. As the correctness and validity of the information is challenged, it is well to reproduce it. It was as follows:

"In the Circuit Court of Pemiscot County, Missouri, to November Term, 1903.

"State of Missouri, County of Pemiscot, ss.

"State of Missouri v. Leo Spivey.

"L. L. Collins, prosecuting attorney within and for the county of Pemiscot and State of Missouri, upon his official oath informs the court, that Leo Spivey, late of the county of Pemiscot and State aforesaid, on the 15th day of May, 1903, at the county of Pemiscot and State aforesaid, did then and there in and upon the body of one John Martin, then and there being, unlawfully, willfully, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought make an assault, and with a certain dangerous and deadly weapon, to-wit, a knife, which said knife was then and there of the length of eight inches, the blade of which said knife was of the length of three inches and of the breadth of one-half an inch, and which said knife he, the said Leo Spivey, in his hand then and there had and held, he, the said Leo Spivey, then and there unlawfully, willfully, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought did strike at and stab him, the said John Martin, in and upon the neck and throat of him, the said John Martin, with the deadly and dangerous weapon aforesaid, to-wit, the knife aforesaid, thereby and thus inflicting on and giving to

him, the said John Martin, in and upon the neck and throat of him, the said John Martin, one mortal wound, which said mortal wound was of the length of five inches and of the depth of two inches, of which said mortal wound he, the said John Martin, at the county of Pemiscot and State of Missouri, then and there instantly died. And so L. L. Collins, prosecuting attorney aforesaid, upon his official oath as aforesaid, doth say that he, the said Leo Spivey, him, the said John Martin, in the manner and by the means aforesaid unlawfully, willfully, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought did kill and murder; against the peace and dignity of the State.

"L. L. Collins, Prosecuting Attorney.

"L. L. Collins, prosecuting attorney, makes oath and says that the facts stated in the above and foregoing information are true, according to his best knowledge, information and belief.

"L. L. Collins.

"Subscribed and sworn to before me this the 26th day of August, 1903.

"(Seal) J. W. Green, Clerk of the Circuit Court."

To this information defendant, by his counsel, on the 1st day of December, 1903, interposed a demurrer, which demurrer was by the court overruled. And upon the 15th day of February, 1904, it being at the February term, defendant filed his petition and affidavits for a change of venue from the Hon. H. C. Riley, the trial judge of the Pemiscot County Circuit Court, which said petition and affidavits are in words and figures as follows:

"In the Circuit Court of Pemiscot County, Missouri, February Term, 1904.

"State of Missouri against Leo Spivey, defendant.

"Now comes Leo Spivey, defendant in the above-entitled cause, and by this application and petition for change of venue states that the Honorable H. C. Riley,

judge of said court, will not afford him a fair and impartial trial in said cause on account of the bias and prejudice of said judge. Defendant further says that the information leading to the belief set out above has come to his knowledge since the last term of this court.

"Wherefore, defendant asks that the venue of said cause be changed to some court or judge where said prejudice does not exist.

"LEO L. SPIVEY.

"Leo Spivey, the above-named defendant, being duly sworn, upon his oath, says that the Honorable H. C. Riley, judge of the circuit court of Pemiscot county, in which the above-entitled cause is now pending, and in which this defendant stands charged by information with murder in the first degree, will not afford defendant a fair trial in said cause, for the reasons above set forth in the foregoing petition for a change of venue.

"LEO L. SPIVEY.

"Subscribed and sworn to before me, this the 15th day of Feb. 1904.　　　　　"J. W. GREEN,

"Cir. Clk.

"State of Missouri, County of Pemiscot, ss.

"Geo. W. Dashman and D. R. Lee, having first been duly sworn, upon their respective oaths, state that they have seen and heard read the above and foregoing petition and affidavit of the defendant, Leo Spivey, for change of venue, and state that the facts set out therein are true, and that the said judge of said court will not afford defendant a fair and impartial trial in said cause for the reasons alleged, and that they are not of kin or counsel for the defendant in said cause.

"GEO. W. DASHMAN,

"D. R. LEE.

"Subscribed and sworn to before me this the 15th day of Feb. 1904.

"(L. S.)　　GEORGE S. COPPEDEGE, Notary Public.

"Term ex: Mch. 9, 1905."

The State, through her counsel, resisted this application and introduced a number of witnesses. It is unnecessary to burden this statement with a detailed statement of the testimony of the witnesses upon this application for a change of venue. It will suffice to say that the witnesses testified that the general reputation of George Dashman, one of the persons making the supporting affidavit for a change of venue, as an honorable, upright, law-abiding and moral citizen was bad; it was further shown that he was convicted of an offense in the circuit court of Pemiscot county and fined $50; however, it appears that this judgment of conviction was appealed from to the St. Louis Court of Appeals and was at the time of this trial pending in that court. This appeal, of course, suspended this judgment of conviction. There was also an offer of an entry in the justice of the peace docket of a conviction of another offense; however, this docket entry is not set out in the record, and it also appears that this judgment was appealed from and was pending at the time of this trial. The testimony as to the other affiant supporting the affidavit of the defendant for a change of venue, D. R. Lee, simply consisted of the statements of numerous witnesses that affiant was reputed not to be of sound mind; a number of witnesses used the expression that they considered him "nutty," and upon inquiry by the court as to what they meant by that expression, said they thought he was using some sort of drug and "whiffing at coke." At the close of the evidence upon this application the prosecuting attorney, Mr. Collins, thus addressed the court: "I ask the court to deny the application for a change of venue for the reason that the affidavit made in support of the application is not sufficient in form; for the reason that the affidavit made in support of the application for a change of venue is not made by two reputable witnesses; and for the reason that sufficient notice, in fact no notice at all, was given the prosecuting attorney that

this application for a change of venue would be made.''
The court overruled this application and in doing so
gave expression to its views upon that subject as fol-
lows: ''I deferred action yesterday in order that I
might have an opportunity to examine this question, as
far as the means at hand permitted. I do not know
that a case of this kind, exactly in point, has ever been
passed on by the courts of this State. I am unable to
find one. The courts do hold that it is the duty of the
court, upon the presentation of an application, to hear
the application and to order the change of venue. This
is an application against the judge, and it is offered to
disqualify this court, the judge of this court, from try-
ing the case. The statute provides that the defendant
shall make the necessary affidavit, or an affidavit setting
forth that the judge will not give him a fair trial. These
gentlemen have gone further and said that the judge
was prejudiced, and for that reason would not give him
a fair trial. The law says in addition to the affidavit
of the defendant it must be supported by the affidavit
of two 'reputable' witnesses who are not of kin or of
counsel for defendant. Then I take it that the statute
means what it says, and the court in the interpretation
of that statute, if it means what it says, must hear this
application, and this evidence. In the first place, I
think it is the privilege of the court, and the court has a
right to determine whether or not the supporting wit-
nesses are of kin or of counsel to the defendant, and
whether or not the witnesses are reputable witnesses,
reputable persons. These are questions for the court
to pass upon. Now the testimony here shows that one
of the witnesses, Dashman, undertakes to criticize the
court, the conduct of the court, on account of some pre-
vious action or case. The testimony shows that Dash-
man is a man who has been indicted. That fact of it-
self is not evidence of guilt, especially in view of the
fact that there is an appeal pending in that case; in
other words, there is no guilt established against the de-

fendant until final judgment, and there is no final judgment until the case is disposed of by a higher court. In addition to that, we have the testimony of gentlemen who live here in town, and they say this man is a man of bad moral character. One I believe said he run a whorehouse in town. Is the court to conclude from that testimony that this man is a reputable citizen? If that is true, it would not be hard for any man in Pemiscot county to prove that he was a reputable citizen. So far for Mr. Dashman. Now the other man they say is weak-minded. Some of the witnesses used the expression that he was 'nutty' and 'off his base,' expressions of that kind, showing to the court that perhaps he is not in a condition to pass upon the importance and magnitude of matters of this kind, and not such a citizen as is considered reputable under the laws of this State. The courts have also said that there must be notice given of this application for a change of venue. However delicate the task imposed on us by statute, especially since you gentlemen have assumed the position that we are not anxious to try this case, we are disposed to believe and will hold that this application is not such an application as in law would warrant the court in granting defendant a change of venue to a different circuit or to call in a different judge, and will overrule the application.''

The trial then proceeded. The testimony upon the part of the State tended to show that defendant and deceased both worked at a sawmill which was known as the Himmelberger-Friant mill, in the town of Pascola, in Pemiscot county. Deceased Martin lived in a house a short distance away from the mill. There was an unfriendly feeling existing between the deceased and the defendant, and some two weeks prior to the final difficulty defendant threatened to one witness that he would give deceased ''a beating,'' to another witness threatened to give deceased a ''licking,'' and to another said he would ''do him up if he ever fooled with him again.''

Other witnesses testified to violent threats made by de-
fendant on the day of the killing.   Martin, the deceased,
worked upstairs in the mill and defendant worked down-
stairs in the engine and boiler room.   When the mill
whistle blew for noon on the day of the killing, some
of the witnesses testified that the defendant was stand-
ing in the mill at the foot of the stairway with an open
knife in one hand and a club in the other; other wit-
nesses testified that they did not see any knife.   The de-
ceased Martin when he reached the ground from his
work upstairs in the mill, started and was going towards
his home.   Defendant, so some of the witnesses state,
started rapidly towards him with a club in his hand;
the witnesses were unable to state whether or not the
defendant had the knife in his hand as he was going
toward the defendant; none of them were close enough
to see. Some of the witnesses for the State testified that
defendant, as he was going towards deceased, called to
deceased to "Halt there, you God damn son-of-a-bitch."
After catching up with Martin defendant struck him
with a club and then the deceased picked up a club and
several blows were exchanged between the two, and af-
ter the exchanging of such blows deceased started off
again and defendant after him.   During the difficulty
deceased, so one or more of the witnesses state, was
heard to say, "Stop Leo, quit, I've got enough." Dur-
ing this difficulty defendant used his knife and cut de-
ceased three or four times on the neck and other por-
tions of the body, from which wounds he died in from
ten to twenty minutes.   The dying declarations were
testified to by Mrs. Martin, the wife of the deceased, as
well as by witness Bert Floyd, which dying declara-
tion will be treated of during the course of the opinion.
There was also testimony introduced on the part of the
State, showing flight on the part of the defendant and
that he was captured in Fresno, California.   It was
also shown that, after being arrested in California, the

191 Sup—7

defendant admitted that after he left the scene of the difficulty he carried two pistols and a gun. There was a knife taken from the defendant, and he admitted that it was the knife with which he did the stabbing.

On the part of the defendant, the defendant himself was a witness, and testified that he did not intend to kill the deceased, but was simply acting in self-defense. He detailed minutely the entire difficulty and introduced a number of witnesses, and it is sufficient to state that the testimony on the part of the defense tended to prove that defendant worked downstairs in the engine and boiler room and piled wood for the fireman; and that deceased worked upstairs on the cut-off saw and cut off slabs to fire with. The distance between the two was about fourteen feet. That several times prior to the day of the difficulty deceased pushed slabs down the chute on defendant, and that defendant complained to him, told deceased it was dangerous and asked him to stop it. The deceased declined to comply with defendant's request, and told defendant he would have to get out of there, and defendant then complained to the foreman, Emuel Snider. That a week before the final difficulty deceased came down into the boiler room where defendant, the engineer and fireman were at work, threatened to whip defendant, walked towards a pile of wood as if intending to pick up a stick or a piece of iron, and the fireman got in between them. That then the deceased cursed the defendant and threatened to kill him, if he ever made a break at him. Defendant's evidence further tended to show that at another time deceased came down into the engine room and acted like he was going to throw a brick at defendant, or draw a pistol. That deceased continued to throw slabs down the chute, which fell on defendant. That deceased had sent defendant word to meet him at the steps at noon, and defendant was there and waited for a minute and a half, with the club in his hand. That defendant did not have his knife open at the steps, nor

when he went out of the mill. That deceased was standing some distance away, perhaps forty feet from the mill, and he motioned for defendant to come to him. When defendant got to him, deceased said he was going to whip defendant, and made a move like he was going to draw a pistol. Defendant then picked up a club and struck deceased the first lick. Deceased picked up a larger club and struck back. Deceased moved a few steps away and defendant followed him, fearing, as the defendant states it, that he would draw a pistol. Defendant then cut deceased with a knife; the first cut was intentional, but the others were accidental. Defendant was very positive that deceased was facing him all the time during the difficulty. Defendant then testified that he left the place of the difficulty, expecting to stay in the woods till he could hear whether there was any danger or not; but that some one shot at him and he concluded he had better leave the country.

This is a sufficient indication of the proof upon which this cause was submitted to the jury to enable us to determine the legal propositions disclosed by the record. At the close of the evidence the court instructed the jury and the cause was submitted to them and they returned a verdict of guilty of murder in the first degree as charged in the information. The instructions will be noticed in the course of the opinion. Motions for new trial and in arrest of judgment being overruled, judgment of sentence in accordance with the verdict was entered of record, and from this judgment the defendant, in proper form and due time, prosecuted his appeal to this court, and the record is now before us for consideration.

OPINION

The record in this cause discloses the assignment of numerous errors of the trial court as a basis for the reversal of this judgment. We will give the complaints

of appellant such attention as they merit and demand, in the order in which they are suggested in the brief or learned counsel for appellant on file in this cause.

The first and most important proposition with which we are confronted in this cause, and which is disclosed by the record, is the complaint of appellant at the action of the trial court in denying his application for a change of venue. The correct solution of this question leads us to a consideration of the history of the legislation upon the subject of application for changes of venue in criminal causes as well as the interpretation by this court of the different provisions of the statute applicable to the subject. An examination of the provisions of law since 1835 in respect to changes of venue makes it manifest that the legislation on the subject has been fluctuating. In 1835 (sec. 17, p. 487, R. S. 1835), the order of removal could only be made upon the application of the defendant by petition setting forth the facts authorizing such order, verified by the affidavit of the defendant, and in addition the truth of such facts had to be supported by the affidavit of some *credible disinterested person*. Under an act of the General Assembly, approved February 27, 1843 (Laws 1842-43, p. 33), there was a slight change upon this subject, in this, that the truth of the facts alleged in the application of the defendant had to be supported by the affidavits of two *respectable* witnesses. We find by reference to the General Statutes of 1865, page 845, section 19, that it is provided that "the petition of the applicant for a change of venue shall set forth the facts, and the truth of the allegations shall be supported by the affidavit of the defendant, or some *credible disinterested person;* and reasonable previous notice of such application must be given to the prosecuting attorney." In the case of State v. O'Rourke, 55 Mo. 440, this court, after quoting section 15, chapter 212, of the General Statutes of 1865, which provided that the prejudice of the judge should be a good cause for removal, expressly ruled

that the provisions of section 19 as herein quoted, were applicable to the cause set forth in section 15 as above indicated, and that an application for a change of venue, predicated upon section 19 herein referred to, on account of the prejudice of the judge, simply verified by the affidavit of the defendant or some *credible* disinterested person, was all that was required, and that the court, under the law in force at that time, for the cause embraced in the application in that case, which was the prejudice of the judge, had no discretion in the matter when the law was complied with. We have, then, under the law of 1865, according to the interpretation of the statutes then in force upon this subject, in State v. O'Rourke, supra, an entire absence of any requirement of affidavits of either *credible, respectable* or *reputable* witnesses in support of the application for the removal of the cause upon the ground of the prejudice of the judge.

In 1873, by an act of the General Assembly, approved March 19, 1873 (Laws 1873, p. 56), section 19, herein cited, was amended so as to read as follows: "The petition of the applicant for a change of venue shall set forth the grounds upon which such change of venue may be sought, and the truth of the allegations thereof shall be proved to the satisfaction of the court by legal and competent evidence; and the prosecuting attorney may, in such case, offer evidence in rebuttal of that submitted in support of such application: provided, however, that reasonable previous notice of such application shall in all cases be given to the prosecuting attorney." This section, as amended, was the only provision of the statute in force at that time authorizing the presentation of application for changes of venue; hence, it was held in the case of State v. O'Rourke, that an application for the removal of the cause, on the ground of the prejudice of the judge, was subject to the terms and provisions of that section, and in discussing the defendant's application in the O'Rourke case, which

was predicated upon the ground of the prejudice of the judge, this court in the discussion of section 19 as amended by the Act of March, 1873, said: "It will be seen that this amended section 19 materially changes the manner of obtaining a change of venue in criminal cases. It is now required that the truth of the allegation set forth in the application, as the grounds upon which the change of venue is sought, shall be proved to the satisfaction of the court by legal and competent evidence. This certainly has the effect to submit that which was imperative on the court before the amendment to the discretion of the court, so that under this amended section, the question as to whether the motion for the change of venue shall be allowed or refused is now submitted under the evidence to the sound discretion of the court. If the judge's mind is satisfied from the evidence that the facts relied on are true, he should change the venue; otherwise not. There seems to have been no evidence offered to sustain the petition in this case, but the defendant wholly relied on the fact that the application was verified by his affidavit, as was required by section 19 before it was amended in 1873. We think that the Act of 1873 governs the case, and whether its requirements be reasonable or unreasonable, it must have the effect to submit the whole question to the discretion of the court, and as no evidence was offered to sustain the application, we cannot say that the discretion of the court was improperly exercised."

This brings us to the provisions of 1879 and 1889 upon this subject, which are substantially the same as section 2594, Revised Statutes 1899, upon which the application in this cause was predicated. This section provides: "When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases: First, when the judge of the court in which said cause is pending is near of kin to the defendant by blood

or marriage; or, second, when the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him by blood or marriage; or, third, when the judge is in anywise interested or prejudiced, or shall have been counsel in the cause; or, fourth, when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial.'' Then follows section 2595, which provides: ''Whenever, in any criminal cause, the defendant shall make application under oath, and supported by the affidavit of two or more reputable persons, not of kin or counsel for the defendant, to the truth of the allegations in such application for a change of venue, for any of the reasons stated in the next preceding section, it shall be lawful for the judge to hear and determine such application; or whenever it shall be within the knowledge of the court or judge that any of the causes enumerated which disqualify him in any case exist, the defendant and prosecuting attorney may by agreement in writing, with the concurrence and approval of the court, elect some attorney at law, who possesses all the qualifications of a judge of the circuit court, as special judge in said cause: Provided, nothing in this act shall be construed as to authorize the selection of any attorney as special judge who is near of kin to the defendant or judge of such court by blood or marriage, or when the offense is alleged to have been committed against the person or property of said attorney, or some person near of kin to him, or when said attorney is in anywise interested or prejudiced or shall have been of counsel in the case.''

At the very inception of the consideration of this proposition it must be observed that there is an entire absence of any provision of the statute suggesting or indicating any method of proof as to the truth of the al-

legation in the petition of the defendant contemplated
by sections 2594 and 2595, supra. When we consider
the plain and unambiguous provisions of section 2576,
that in any application for a change of venue on the
ground of the prejudice of the inhabitants of the coun-
ty, not only shall the petition be supported by the af-
fidavit of the petitioner and at least two credible disin-
terested citizens of the county where such cause is pend-
ing, but the truth of the allegations of the petition shall
be proved to the satisfaction of the court by legal and
competent evidence, and the prosecuting attorney may
in such case offer evidence in rebuttal of that submit-
ted in support of such application, the absence of any
provision of the statute suggesting or indicating any
method of ascertaining the truth of the allegations in
the application, under sections 2594 and 2595, supra,
becomes very significant, and clearly indicates an in-
tention on the part of the lawmakers to make a distinc-
tion in the procedure in the two classes of applications.

The record discloses in this cause that the prosecut-
ing attorney appeared to the presentation of defend-
ant's application based upon the section heretofore
cited, and offered proof as to one of the persons sup-
porting the defendant's application by affidavit, tend-
ing to show that the affiant was not of good reputation;
as to the other witness, he offered proof tending to show
that the affiant was reputed to be of weak mind. It is
insisted, upon this showing, that the court properly de-
nied the application on the ground that one of the wit-
nesses was not reputable and that the other was of un-
sound mind, and that no reasonable notice of the pre-
sentation of the application was given. Upon the ques-
tion of notice of application, we are clearly of the opin-
ion that the record discloses a waiver of any such notice.
There is an entire absence in the record at the time this
application was presented of any suggestion on the part
of the prosecuting attorney that he had had no notice
of this application, and the fact of insufficient notice,

so far as the record discloses, was never suggested un-
til after the close of the testimony upon the application,
in which numerous witnesses and records were intro-
duced, upon the theory that the State had the right to
show, under this statute, that the witnesses making af-
fidavit in support of the application were not reputable.
There are no express provisions in sections 2594 and
2595, upon which this application is based for the giv-
ing of any previous notice; however, conceding that a
reasonable notice is required under the law, and there
is no necessity for now undertaking to determine that
question, as to whether a reasonable notice should be
given under these sections of the presentation of the
application, we are clearly of the opinion that, having
appeared at the presentation of the application, and re-
sisting it by the introduction of testimony, it was then
entirely too late to suggest that there was no notice
given.

This brings us to the consideration of the only re-
maining proposition upon this subject, that is, as to the
inquiry upon this application and the introduction of
witnesses as to the character of the persons making
the affidavit supporting the application of the defend-
ant. It will not be seriously contended that any of the
testimony introduced established the fact that the par-
ties making the affidavits were incompetent witnesses.
Concede that George Dashman, one of the persons sup-
porting the application by affidavit, was of bad repute,
as an honorable, law-abiding and moral citizen, that by
no means disqualified him as a witness. That the testi-
mony in respect to the insanity of the other affiant, Lee,
absolutely falls far short of establishing his insanity,
so as to render him an incompetent witness, is too plain
for discussion.

At a very early period in the history of this court
the true spirit and meaning of a statute regulating crim-
inal procedure, substantially embracing the same feat-
ures as are embraced in the section of the statute now

under discussion, was clearly interpreted in the case of Freleigh v. State, 8 Mo. 436. In that case the court had in judgment the Act of February 9, 1843, which required the truth of the allegations contained in the application of the defendant for a change of venue to be supported by the affidavit of two *respectable* witnesses. The present statute upon which this application is based, requires the truth of the allegations to be supported by two or more *reputable* persons. In the one the term "respectable" and in the other the term "reputable" is used. We take it that it will not be seriously contended that there is any substantial difference in the meaning of these two terms as applicable to the subject now being discussed. As applied to witnesses they practically mean the same thing. Mr. Webster thus defines the term "respectable:" "Worthy of respect; fitted to awaken esteem; deserving regard; hence of good repute; not mean; as, a respectable citizen;" and the term "reputable:" "having or worthy of good repute; held in esteem; honorable; praiseworthy; as, a reputable man or character." In the Freleigh case the trial court had denied the application for a change of venue on the ground that the affiants were not respectable witnesses as required by law. This court in discussing the proposition, speaking through the esteemed and learned Judge NAPTON, said: "The first error assigned is the refusal of the court to grant a change of venue. The affidavits of the defendant and his compurgators conform literally to the requisitions of the statute; but it appears, from the bill of exceptions, that the witnesses who swore to their belief of the facts relied on by the defendant in his affidavit, were examined by the court, 'touching their means of knowledge, and the grounds of their belief,' and though it does not appear that the action of the court was affected by anything elicited in this investigation, yet the court, it is stated, refused to change the venue, on the ground that it did not appear that the affiants were respectable, as required by law.

If the term, 'respectable' is to be understood in its or-
dinary acceptation, it is obvious that the granting a
change of venue must be in all cases to which the statute
applies purely a matter of discretion of the court.  The
phrase is one unknown to the law, and it must be in the
breast of every judge, who is called upon to give it a
construction, to fix the criterion of respectability, by
which his action will be governed.  Nothing could be
more uncertain and fluctuating than such a standard;
and with this interpretation of the law, a change of ven-
ue could never be obtained, however exactly and liter-
ally the applicant might comply with the terms of the
statute, unless the judge, in his discretion, should think
proper to grant it.  As the law stood in 1835, Rev. Code,
p. 478, the truth of the allegations contained in the pe-
tition were required to be supported by the affidavit of
some 'credible disinterested person.'  The act of Feb-
ruary 9, 1843, requires 'two respectable witnesses.'  The
term 'respectable,' used in this last act, we understand
to be equivalent to the phrase, 'credible disinterested,'
as used in the act of 1835, and they are each synonymous
with the word 'competent.'  To this last epithet, the
law has affixed a definite idea, and a respectable or dis-
interested witness, means a competent witness.  Thus,
the Statute of Frauds, 29 Chas. II, ch. 3, sec. 5, requires
a devise to be attested, and subscribed by three or four
credible witnesses; and it has been always held, that the
word credible, as used in this statute, means competent.
Lord CAMDEN said, in Doe dem.  Hindson v. Kersey,
reported in 1 Day's Cases in Error, 41:  'I understand
the word credible to mean worthy of credit; when ap-
plied to the person of a witness, it bespeaks him to be a
person of capacity to deserve credit; I say, of capacity
to deserve credit, because no man can be sure of obtain-
ing credit, let him be ever so credible.' ''

It is not contended in this case that the witnesses
Dashman and Lee were incompetent; hence, we see no
escape from the conclusion, if the rule of construction

announced by Judge NAPTON is to be followed, that the term "reputable" must receive the same interpretation as that of "respectable" in the case just cited. It is apparent that the lawmakers, confronted with the interpretation of the term "respectable" by Judge NAPTON, by the use of the term "reputable," did not intend to make any change in the character of the witnesses who were required to make the supporting affidavit in applications for changes of venue. It is also apparent that in applications for change of venue based upon sections 2594 and 2595, provisions for the satisfactory proof of the allegations of the petition of the defendant were purposely omitted, and it was intended by the Legislature that the provisions of these sections should be imperative, thereby relieving the trial judge, who doubtless is often unjustly charged with prejudice, from determining the issue presented in applications of that character, between the judge on the one side and the defendant and his supporting witnesses on the other.

The application presented by the defendant in this cause was in strict conformity with the requirements of sections 2594 and 2595. It embraces every essential requirement of the provisions of those sections, and while we recognize that almost intolerable abuses are practiced under the provisions of the law as it now stands, yet with the clear recognition by the Bench and Bar for so many years that the provisions of the statute applicable to changes of venue, on the ground of the prejudice of the trial judge, are imperative, we see no escape from the conclusion that the application in this case was in proper form and should have been granted. Emphasizing the correctness of this conclusion, we find the same learned judge who decided the Freleigh case, at a much later period, announcing that the provisions of the statute upon this subject in 1879, which is substantially the same as the present statute, were imperative. In State v. Greenwade, 72 Mo. l. c. 304, NAPTON, J., speaking for the court, in discussing this ques-

tion, said: ''There have been great fluctuations in our legislation on this subject.  At one time, in 1873, the whole matter was left to the discretion of the judge, but subsequently the law, as it now stands, is quite imperative, and requires the election of a special judge.''  In State v. Shipman, 93 Mo. 147, in treating sections 1877 and 1878, Revised Statutes 1879, it was ruled that ''when the affidavits and application made and filed by the defendant conform to the requirements of said sections of the statute, it becomes the duty of the presiding judge to hear such application, and immediately thereafter, by an order of record, to empower the members of the bar present, to the number of three or more, duly enrolled in said court and licensed attorneys of the State, and not of counsel in the case, to proceed to the election of a special judge for the trial of the particular cause pending, or to decide defendant's application for a change of venue, etc., as provided by said section 1878,'' etc.  It was further announced in that case, emphasizing the views of this court, that the provisions of the statute were quite imperative. · It was said: ''Upon the making and filing of said affidavits and application, the presiding judge has no power or authority to act in the cause, except to make the order contemplated in section 1878.  After that, his subsequent acts in the case were unauthorized, invalid, and without any binding force, as against this defendant.''  It will be observed that the provisions of the present statute upon which this application is based are substantially the same as those treated in the Greenwade and Shipman cases, with the exception of some changes made in respect to the selection of special judge.

As this cause is to be retried it is proper that we now consider some of the remaining complaints of appellant.

The sufficiency of the information in this cause was challenged by appellant, and a demurrer was interposed.  It is sufficient to say of this contention that while

we are of the opinion that the demurrer was properly overruled, yet the charge of inflicting and giving the wound to the deceased does not conform to the approved precedents in the well-considered cases by this court. It would be much more in harmony with precedent and good pleading, instead of using the terms ''thereby and thus inflicting the wound,'' etc., etc., to have alleged, after the terms ''to-wit, the knife aforesaid,'' then and there willfully, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought, giving to him, the said John Martin, in and upon the neck and throat of him, the said John Martin, one mortal wound, etc., etc.

Complaint is also made as to the testimony of Mrs. Martin, wife of the deceased, who testified to what purported to be the dying declarations of her husband. Upon this complaint we have consulted the record, and are of the opinion that the proper foundation was laid for the introduction of the dying declaration, and that the declarations of the deceased, made to his wife, in respect to the difficulty in which he was stabbed, were competent, but that part of her statement embraced in the following answer to a question, in which, as disclosed by the record, she said: ''He begged him not more than two weeks before it happened; begged, laughed and talked and pleaded with him not to run on him, and talked him out of running on him once before that; Spivey run on him once before that with his knife and wanted to kill him and Martin talked him out of that;'' was clearly incompetent and the court should have promptly excluded it when the objection was made, and not waited to cure this error by directing its exclusion in an instruction to the jury.

The prosecuting attorney, when the defendant was on the witness stand, propounded this question: ''Now state if you have not been in the penitentiary for stealing cattle?'' It is insisted by appellant that this was an improper question and constituted error. The only ob-

jection to that question is its form. The right to make the inquiry sought by the question is predicated upon section 4680, R. S. 1899, which provides: "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer." The defendant, if he goes upon the stand as a witness, falls within the purview of that section. The purpose of that law was simply to avoid the necessity of introducing records of convictions, and we can see no harm that can be done a defendant. If he has never been convicted he can say so, and if he has been convicted of a criminal offense and testifies in a case, whether the question is propounded to him or not, as to whether or not he has ever been convicted, the State, for the purpose of discrediting his testimony, could introduce the record of his conviction. Hence, we are unable to see what harm this statute, under the rules of evidence, does a defendant. We are, however, of the opinion that the prosecuting attorney should propound this question in accordance with the statute, that is, to inquire of the witness if he was ever convicted in any court of a criminal offense, and not for the purpose of influencing the jury, ask him "if he wasn't in the penitentiary of this State for stealing cattle or burglarizing some store." Section 4680, supra, does not conflict with prior section 2637, Revised Statutes 1899, which undertakes to regulate and limit the cross-examination of a defendant. The effect of the enactment of section 4680, which is a later statute, is simply to add an exception to the provisions of section 2637, supra, in respect to the cross-examination of the defendant. That this inquiry may be made of the defendant when he has testified as a witness in his own behalf, was decided in State v. Blitz, 171 Mo.

530, and followed and approved in State v. Thornhill, 174 Mo. 364.

It is also insisted that the court erred in permitting the State to show by witnesses Wildee and Taylor what deceased said to them prior to the difficulty and in the absence of the defendant. An examination of the record discloses that the court permitted these witnesses to make such statements on the ground that they were part of a conversation they had with the deceased, which was drawn out by appellant's counsel. Under these circumstances there was no error in these witnesses detailing what was said in a conversation, a part of which was drawn out by counsel for appellant in their cross-examination of the witnesses. Under the well-settled rules of evidence this was clearly permissible.

There are other complaints as to the admission of testimony which we deem of not sufficient importance to require a discussion, and as this case is to be retried, we are satisfied that the trial court will confine the testimony to the issues joined between the State and the defendant.

This leads us to the consideration of numerous complaints as to the conduct and remarks of the prosecuting attorney representing the State in this cause. We shall not undertake to discuss at length these complaints; however, we will say that we have read in detail the entire disclosure of the record before us, and there is no escaping the conclusion that many of the things said by the prosecuting officer would have been better left unsaid. The record abounds in cautions from the learned trial judge to the representative of the State, yet they seem to have been practically unheeded. While the zeal and earnestness of the successful and learned prosecuting attorney in this case, in the prosecution of offenses, is to be commended, yet we must not overlook the fact that he represents the entire people, including the defendant, and that convictions can only be fully justified when secured upon the facts developed in the

case and not by improper remarks during the progress of the trial or in the argument to the jury, which frequently go far toward influencing the conclusions reached. While we, from experience, can make allowances for the many trials to which the circuit judge is subjected in the trial of an important case, and the record in this cause discloses that he made frequent efforts to keep the prosecuting attorney within the record, yet there is only one course for the trial court to pursue in cases of that character, and that is, if the prosecuting officer insists upon getting out of the record, to promptly set aside verdicts of convictions procured in that way. This is a serious case; in fact, all criminal causes are serious, but this one is particularly so because it involves the life of a human being, and while the testimony, as disclosed by this record, is very damaging to the defendant, and is amply sufficient to support the finding of the jury, and if he is guilty as charged, he should suffer the penalty imposed, yet the infliction of the death penalty can only be justified upon an absolutely fair and impartial trial.

The court fully instructed the jury upon murder of the first and second degrees and manslaughter of the fourth degree, and we have fully considered them and find that they are such as have repeatedly met the approval of this court, with the exception of No. 12 wherein the term "shooting" is used instead of stabbing. The instructions cover all the grades of crime to which the testimony was applicable, and while there should be an instruction for manslaughter in the fourth degree, yet upon a retrial of this cause we simply suggest that it might be necessary, upon a consideration of the evidence, to have this instruction cover that phase of manslaughter in the fourth degree arising from heat of passion, for which there are many precedents in the decisions of this court, and not upon the theory of culpable negligence.

191 Sup—8

We have thus given expression to our views upon the legal propositions involved in the record presented in this cause, which results in the conclusion that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

All concur.